UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MAUREEN WILK,

                         Plaintiff,

        -v-

TOWN OF POUGHKEEPSIE, NEW YORK,
OFFICER RUSSELL TOMPKINS, individually and
as an employee of the Town of Poughkeepsie,
OFFICER MICHAEL LOUCKS, individually and as
an employee of the Town of Poughkeepsie, and
KEVIN DAHOWSKI,

                         Defendants.

Case No. 10-CV-5032 (KMK)

OPINION AND ORDER

Appearances:

Maureen Wilk,
Catskill, New York
*Pro Se*

David Lewis Posner, Esq.
McCabe & Mack LLP
Poughkeepsie, New York
*Counsel for Defendant*

KENNETH M. KARAS, District Judge:

        Maureen Wilk ("Plaintiff") brings this action, pro se, against the Town of Poughkeepsie

("Poughkeepsie"), Officer Russell Tompkins ("Tompkins"), Officer Michael Loucks ("Loucks")

and Kevin Dahowski ("Dahowski"), under 42 U.S.C. § 1983 ("§ 1983").[1]  Plaintiff alleges that

her federal constitutional rights were violated as a result of a malicious prosecution following

_____

        [1]  Defendants' submissions at times refer to Officer Tompkins as Officer "Tomkins."  In
his testimony at trial and in his police reports, however, the officer denotes the spelling of his
name as "Tompkins."  (Tr. 6:22; Tompkins Aff., Ex. A.)  The Court, therefore, adopts the
spelling "Tompkins" throughout this Opinion.

her arrest on July 9, 2006 and preceding her acquittal of a driving while intoxicated ("DWI")

charge.  Defendants Tompkins and Loucks ("Defendants") have moved for summary judgment.

For the reasons stated herein, the Motion is granted.

## I. Background

### A. Facts

This action arises from a single vehicle motor vehicle collision involving Plaintiff, who is

a female, and one other individual, Kevin Dahowski, who is a male.  Plaintiff and Dahowski

were traveling in a car together at a "high rate of speed" on Route 9G, also known as Violet

Avenue, in the Town of Poughkeepsie just before one o'clock in the morning on July 9, 2006.

(Amended Complaint ("Am. Compl.") ¶ 6; Affidavit of Fact ("Pl.'s Aff.") 1.)  Shortly after

passing another car on the two-lane road, the Dodge Dart in which Plaintiff and Dahowski were

traveling went off the road and crashed into a fence.  (Pl.'s Aff. 1; Plaintiff's Rule 56.1

Statement Response ("Pl.'s 56.1") ¶ 1; Am. Comp. ¶ 6; Littell Dep. 10:7-13.)

Officers Tompkins and Loucks were among those who responded to the accident and

arrived at the crash site separately, with Tompkins being on the scene before Loucks.

(Tompkins Aff.  ¶ 5; Tr. 52:7-9.)  Tompkins was not the first responder to the scene, however, as

"[f]ire department and EMS personnel beat [him]" there.  (Tr. 8:21-23; Pl.'s Aff. 1 ("The

paramedics were the first people on the scene . . . the police department arrived about 10 minutes

later.").)[2]  In fact, by the time Tompkins arrived at the crash site, there were "already ambulances

on scene, fire department equipment apparatus on scene, and the road was shut down by fire

department personnel, as well as police officers . . . ."  (Tr. 9:21-25.)

---

[2]  "Tr." citations refer to the transcript of proceedings in *People v. Maureen Wilk*, County
of Dutchess Justice Court (March 10-12, 2008).

Tompkins made multiple observations of the physical evidence at the crash site, noting that "[t]he vehicle was in bad condition" with "alcohol [beverage] containers" in and around it, and damage visible on the "front end of the car, [and] the body panels of the car." (*Id*. 10:13, 18-19.)  Significantly, Tompkins also concluded that "the only damage that entered the passenger compartment . . . was on the passenger side of the vehicle or the passenger side of the car." (*Id*. 10:19-22.)

Tompkins spoke with Plaintiff and observed Dahowski at the accident site, noting that Dahowski was "visibly injured" and that it appeared that "his head had struck some portion of the interior of the vehicle." (Tompkins Aff. ¶ 3.)  Tompkins did not "observe any injuries" to Plaintiff, "although she was complaining of neck pain." (*Id*.)  Tompkins administered nystagmus tests for intoxication to Plaintiff and requested that Plaintiff perform an "alphabet test" to the same end — all of which Plaintiff failed. (Tr. 18:3-4; 19:17-19.)  Tompkins concluded that Plaintiff was "obviously intoxicated" (Tompkins Aff. ¶ 7), a fact that is not in dispute.[3]  Finally, Tompkins "was advised by the EMT personnel at the scene that the location of [] Dahowski's injuries were consistent with impact to that portion of the interior of the passenger side vehicle that had been compromised." (*Id*. ¶ 4.)

While at the scene, Officer Loucks interviewed witnesses and directed traffic.  An eyewitness, Edward Littell ("Littell"), told Loucks that "he had seen the accident and observed [a] female occupant in the driver's seat when he approached it." (Loucks Aff. ¶ 2; Littell Dep. 12:20-22 ("There was a woman in the driver's seat with her head against the steering wheel, and

---

[3]  At some point that night, Plaintiff was administered a breath screen test at the Poughkeepsie Police Headquarters by Officer Steven Leung with a result of .15 percent blood-alcohol level. (Tompkins Aff. ¶ 7; *Id*., Ex. A ("Certification of Breath Results").)  Tompkins also proffers that Plaintiff "freely acknowledg[ed] that she had been drinking." (*Id*. ¶ 7.)

there was a man in the passenger's seat.").)  Loucks relayed this information to Tompkins. (Loucks Aff. ¶ 2; Tompkins Aff. ¶ 5.)

It is undisputed that after accompanying Plaintiff on a brief visit to the hospital, where Plaintiff refused treatment, Tompkins then placed her under arrest for driving while intoxicated.[4] (Pl.'s Aff. 1-2; Def.'s 56.1 ¶ 7.)  Although initially charged as a felony, Plaintiff's DWI charge was reduced to an unclassified misdemeanor prior to trial.  (Irwin Aff. ¶ 3.)  Following a jury trial, Plaintiff was acquitted on March 12, 2008.  (*Id*. ¶ 3; Rule 56.1 Statement Response ¶ 11.)[5] Littell was subpoenaed as a trial witness but appeared too late to testify and the prosecution was denied the opportunity to re-open its case to allow Littell to testify.  (Irwin Aff. ¶ 9; *Id.*, Ex. B (Littell trial subpoena); Littell Dep. 17:17-19.)

Plaintiff asserts that Dahowski was driving the car on July 9, 2009.  (Am. Compl. ¶ 6.)[6] Referring to Littell, Plaintiff also theorizes that "Tompkins and Loucks fabricated the name of a phantom witness, which witness did not exist."  (*Id*. ¶ 14.)  Plaintiff also asserts that it is her belief that "the only reason [she] was charged and not [] Dahowski," was because Dahowski's father "who is now deceased, was a long time police officer."  (Pl.'s Aff. 2.)  Plaintiff has

---

[4]  Plaintiff also was charged with the possession of marijuana in the fourth degree, which is not at issue in the current action.  (Irwin Aff., Ex. A (*People v. Maureen Wilk*, Decision and Order, County of Dutchess Justice Court (January 7, 2008))).

[5]  Plaintiff has submitted two documents entitled "Rule 56.1 Statement Response," one of which is dated October 13, 2011 and the other of which is undated.  For taxonomical purposes, the Court will refer to the undated response as "Plaintiff's 56.1 Counter-Statement," while referring to the dated response as "Plaintiff's 56.1 Response."  The Court also notes that Defendants provided adequate notice to Plaintiff of their motion for summary judgment, as set forth in Local Rule 56.2.

[6]  Both Plaintiff and Dahowski claimed that the other person was driving the vehicle. (Tompkins Aff. ¶ 2.)

4

offered no evidence to support this belief.  Plaintiff, nonetheless, argues that Defendants have

"since expanded and stretched the facts" to "meet the criteria of reasonable cause."  (*Id*.)  To this

end, Plaintiff criticizes certain of Defendants' facts as being "not substanieiated (sic) in any

form" or having "many discrepancies."  (Pl.'s 56.1 Counter-Statement 2.)

B. Procedural History

      Plaintiff commenced this action on June 30, 2010, alleging one count of false arrest and

malicious prosecution and a second count attributing municipal liability for the actions described

in the first count.  (Dkt. No. 1.)  On September 22, 2010, Plaintiff also filed an Order to Show

Cause as to why judgment by default should not be entered against Dahowski.[7]  (Dkt. No. 10.)

Following a pre-motion conference with Poughkeepsie, Tompkins, and Loucks on September 20,

2010, at which those defendants claimed that the false arrest claim was untimely (Dkt. No. 9),

Plaintiff filed an amended complaint on October 5, 2010 which did not include the false arrest

claim.  (Ltr. from Maureen Wilk to the Court (Jan. 10, 2011) (Dkt. 22).)  The Court thereafter set

a motion schedule for Poughkeepsie to file a motion to dismiss the Amended Complaint against

it for a lack of municipal liability.  Plaintiff opposed Poughkeepsie's motion for dismissal as

premature.

      On June 29, 2011, the Court granted without prejudice Poughkeepsie's motion to dismiss

all claims asserted against it in Plaintiff's Amended Complaint and opened the case for

---

    [7]  The Court has allowed Dahowski at least three opportunities — on November 8, 2010, December 10, 2010, and January 11, 2011— to appear and contest the entry of judgment by default.  (Dkt. Nos. 17, 20.)  Likewise, Plaintiff has made multiple inquiries to the Court regarding her request for a default judgment.  (Dkt. Nos. 29, 31.)  However, because Plaintiff's complaint fails to state *any* allegations of wrongdoing, let alone explain the Court's jurisdiction over Plaintiff's claim against Dahowski, the Court will address Plaintiff's case against Dahowski in a separate order.

5

discovery by Plaintiff.  (Dkt. No. 27.)  On July 12, 2011, Plaintiff represented that she did not

require any further discovery or depositions.  (Ltr. from Maureen Wilk to the Court (July 12,

2011) (Dkt. No. 28).)  Defendants Tompkins and Loucks made the present Motion for Summary

Judgment on September 12, 2011.  (Dkt. No. 33.)  The Motion was fully submitted on November

8, 2011.  (Dkt. No. 51.)[8]

## II. Discussion

### A. Standard of Review

Summary judgment may be granted where it is shown "that there is no genuine dispute as

to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ.

P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (same).  "When ruling on a

summary judgment motion, the district court must construe the facts in the light most favorable

to the non-moving party and must resolve all ambiguities and draw all reasonable inferences

against the movant."  *Dall. Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003);

*see also Tufariello v. Long Island R.R. Co.*, 458 F.3d 80, 85 (2d Cir. 2006) (noting that a court

must draw all reasonable inferences in the nonmovant's favor).

A party seeking summary judgment bears the burden of establishing that no genuine

issue of material fact exists.  *See Atl. Mut. Ins. Co. v. CSX Lines, L.L.C.*, 432 F.3d 428, 433 (2d

Cir. 2005).  "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is

sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential

element of the nonmovant's claim.  In that event, the nonmoving party must come forward with

admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary

---

[8]  The Court scheduled oral argument for May 21, 2002, but has decided to forego
argument after Plaintiff called the morning of May 21st to cancel her appearance.

judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008) (internal citations omitted).  "When the moving party has carried its burden under Rule 56[(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (footnote omitted); *see also McPherson v. N.Y.C. Dep't of Educ.*, 457 F.3d 211, 215 n.4 (2d Cir. 2006) ("[S]peculation alone is insufficient to defeat a motion for summary judgment.").  "A fact is 'material' when it might affect the outcome of the suit under governing law." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotation marks omitted).  At summary judgment, a district court generally "should not weigh evidence or assess the credibility of witnesses." *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 104 (2d Cir. 2011), *cert. denied*, 132 S. Ct. 1744 (2012).  Instead, a court's goal should be "to isolate and dispose of factually unsupported claims." *Celotex*, 477 U.S. at 323-24.

Courts must generally construe pro se pleadings liberally and interpret them "to raise the strongest arguments that they suggest." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (internal quotation marks omitted).  However, "application of this different standard [for pro se litigants] does not relieve [a] plaintiff of [her] duty to meet the requirements necessary to defeat a motion for summary judgment." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (internal quotation marks omitted).  Thus, a pro se plaintiff cannot rely on conclusory statements to defeat summary judgment, *see Gottlieb v. Cnty. of Orange,* 84 F.3d 511, 518 (2d Cir. 1996), but must still "offer some hard evidence showing that its version of the events is not wholly fanciful," *D'Amico v. City of N.Y.,* 132 F.3d 145, 149 (2d Cir. 1998); *see also Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996) (noting that "conclusory statements, conjecture or speculation by the party resisting the motion will not defeat summary judgment").

7

B. Analysis

Plaintiff's only remaining claim against Tompkins and Loucks is for malicious

prosecution.  "In order to prevail on a § 1983 claim against a state actor for malicious

prosecution, a plaintiff must show a violation of [her] rights under the Fourth Amendment and

establish the elements of a malicious prosecution claim under state law." *Fulton v. Robinson*,

289 F.3d 188, 195 (2d Cir. 2002) (citations omitted).[9]  "The elements of a malicious prosecution

claim under New York law are (1) that the defendant initiated a prosecution against the plaintiff,

(2) that the defendant lacked probable cause to believe the proceeding could succeed, (3) that the

defendant acted with malice, and (4) that the prosecution was terminated in the plaintiff's favor."

*Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000) (internal quotation marks

omitted)).  Defendants contest the second and third elements in their Motion for Summary

Judgment.  (Defendants' Mem. of Law in Supp. of Summ. J. ("Defs.' Mem.") 4.)[10]

_____

[9]  Although Plaintiff cites to the Fourteenth Amendment in her Amended Complaint,
"[t]he Court . . . notes that Plaintiff's allegations of . . . malicious prosecution state a claim *only*
under the Fourth Amendment, and not under the Due Process Clause of the Fourteenth
Amendment." *Ambrose v. City of N.Y.*, 623 F. Supp. 2d 454, 474 n.9 (S.D.N.Y. 2009) (emphasis
in original).

[10]  On the record before the Court, Loucks does not seem to have participated at all in the
initiation of criminal process against Plaintiff beyond relaying Littell's eyewitness information
to Tompkins.  Indeed, the felony complaint against Plaintiff lists Tompkins as the sole
complainant.  (Tompkins Aff., Ex. A.)  "For a police officer to be held responsible for malicious
prosecution . . . his actions must *cause* the initiation of criminal process against the plaintiff."
*Phelps v. City of N.Y.*, 04-CV-8570, 2006 WL 1749528, at *4 (S.D.N.Y. July 27, 2006)
(emphasis in original) (citing *Sykes v. James*, 13 F.3d 515, 520 (2d Cir. 1993)); *see also
Manganiello v. City of N.Y.*, 612 F.3d 149, 163 (2d Cir. 2010) ("To initiate a prosecution, a
defendant must do more than report the crime or give testimony.")

Applying this standard, "courts have found a triable issue of fact as to the initiation
element where the defendant-officer brought formal charges and had the person arraigned, filled
out complaining and corroborating affidavits, swore to and signed a felony complaint, or created
false information and forwarded it to prosecutors." *Trapp-Miley v. City of N.Y.*, No. 09-CV-

8

"[T]he existence of probable cause is a complete defense to a claim of malicious

prosecution in New York." *Savino v. City of N.Y.*, 331 F.3d 63, 72 (2d Cir. 2003).[11]  Probable

3933, 2012 WL 1068102, at *10 (E.D.N.Y. Jan. 17, 2012) (internal quotation marks omitted), *adopted in relevant part by* 2012 WL 1068084 (E.D.N.Y. Mar. 29, 2012); *cf. Jouthe v. City of N.Y.*, No. 05-CV-1374, 2009 WL 701110, at *12 (E.D.N.Y., Mar. 10, 2009) (noting that "the court is not entirely persuaded that Plaintiffs have satisfied the initiation element of the malicious prosecution" claim where all the defendant-officer did was "disclose information within his knowledge" from witness interviews and "sign the complaint"); *Espada v. Schneider*, 522 F. Supp. 2d 544, 553 (S.D.N.Y. 2007) (expressing concern with applying a "rigid rule of causation" in assessing whether an officer initiated a prosecution where the officer "merely report[ed] the results of his investigation and act[ed] at the behest of the prosecuting attorney").

There is a narrow exception to this rule in instances where "a party is responsible for providing false information or manufactured evidence that influences a decision whether to prosecute." *Chimurenga v. City of N.Y.*, 45 F. Supp. 2d 337, 343 (S.D.N.Y.1999) (denying summary judgment on the initiation element where triable issues remained as to whether correction officers gave prosecuting authorities false information); *see Rivers v. Towers, Perrin, Forster & Crosby Inc.*, No. 07-CV-5441, 2009 WL 817852, at *3 (E.D.N.Y. Mar. 27, 2009) ("Giving information to the police that is known to be false qualifies as the commencement of a prosecution."); *Williams v. City of N.Y.*, No. 05-CV-10230, 2007 WL 2214390, at *10-*11 & n.167 (S.D.N.Y. July 26, 2007) (distinguishing an officer who submits allegedly false information by signing and submitting a complaint to a prosecutor, which then led to a prosecution, from a lay person who does the same); *Mejia v. City of N.Y.*, 119 F. Supp. 2d 232, 272 (E.D.N.Y. 2000) (noting that civilian witnesses may be liable for malicious prosecution "if the information they falsely gave the prosecutor induced the prosecutor to act," or if they "conspire[d] with a complaining witness to manufacture evidence that is likely to influence the prosecutor's decision to commence proceedings").  However, Plaintiff has not pled specific facts that could plausibly give rise to an inference that Officer Loucks knowingly falsified Littell's statement.  Instead, Plaintiff relies on her phantom and wholly unsubstantiated assertion of a phantom witness concocted by Defendants.  This type of made-up assertion will not do.  As a result, Officer Loucks, who merely relayed information from a witness, did not cause the initiation of criminal process against Plaintiff and the Court grants Louck's Motion for Summary Judgment on this basis alone.  *See Stein v. City of N.Y.*, No. 08-CV-18015, 2009 WL 400039, at *2 (N.Y. Sup. Ct. Feb. 9, 2009) (granting summary judgment in favor of a defendant where plaintiff failed to establish that the defendant initiated the proceeding); *Brown v. Sears Roebuck & Co.*, 746 N.Y.S.2d 141, 145 (App. Div. 2002) (noting that a "[f]ailure to establish any one of these elements defeats the entire [malicious prosecution] claim").

[11]  Although the issue of probable cause was addressed in a suppression hearing prior to Plaintiff's jury trial, the doctrine of collateral estoppel does not apply to the current analysis of probable cause.  (Irwin Aff., Ex. A (*People v. Maureen Wilk*, Decision and Order, County of Dutchess Justice Court (January 7, 2008))).  Typically, the doctrine of collateral estoppel "bars a

cause exists when the authorities have "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Jocks v. Tavernier*, 316 F.3d 128, 135 (2d Cir. 2003) (internal quotation marks omitted). "[I]n the context of malicious prosecution, [probable cause] has also been described as such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." *Boyd v. City of N.Y.*, 336 F.3d 72, 76 (2d Cir. 2003). Police officers may have probable cause to arrest "even if the total sum of evidence . . . might not persuade a jury to convict" for the crime later charged, *Finigan v. Marshall*, 574 F.3d 57, 63 (2d Cir. 2009), and are "not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest," *Coons v. Casabella*, 284 F.3d 437, 441 (2d Cir. 2002) (internal quotation marks omitted).

Probable cause to prosecute "'is assessed in light of the facts known or reasonably believed at the time the prosecution was initiated, as opposed to at the time of the arrest.'" *Sankar v. City of N.Y.*, No. 07-CV-4726, 2012 WL 1116984, at *10 (E.D.N.Y. Mar. 30, 2012)

---

party from relitigating in a subsequent proceeding an issue clearly raised in a prior proceeding and decided against that party where the party to be precluded had a full and fair opportunity to contest the prior determination." *Johnson v. Watkins*, 101 F.3d 792, 794 (2d Cir. 1996) (internal quotation marks omitted). The Second Circuit has held, however, that a defendant who is acquitted in a jury trial following an adverse determination of probable cause in a pre-trial suppression hearing has not had either "the opportunity []or the incentive to appeal the adverse finding of probable cause," *id.* at 796, and, therefore that the issue has not been fully litigated. *See also Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1458 (2d Cir. 1995) ("Under New York law, a party has not had a full and fair opportunity to litigate an issue if it has had no opportunity to appeal the adverse finding."). Accordingly, Plaintiff did not have a full and fair opportunity to contest pre-trial determinations of probable cause following her acquittal and the doctrine of collateral estoppel does not apply.

(quoting *Carson v. Lewis*, 35 F. Supp. 2d 250, 263 (E.D.N.Y. 1999)).[12]  "In order for probable cause to dissipate [between an arrest and prosecution], the groundless nature of the charges must be made apparent by the discovery of some intervening fact."  *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996); *see also Parisi v. Suffolk Cnty.*, No. 04-CV-2187, 2009 WL 4405488, at *11 (E.D.N.Y. Nov. 30, 2009) ("In the absence of some indication that the authorities became aware of exculpatory evidence between the time of the arrest and the subsequent prosecution that would undermine the probable cause which supported the arrest, no claim for malicious prosecution may lie.") (internal quotation marks omitted); *Williams v. City of N.Y.*, No. 04-CV-2187, 2003 WL 22434151, at *6 (S.D.N.Y. Oct. 23, 2003), *aff'd*, 120 F. App'x 388 (2d Cir. 2005) (same).

In the instant case, Plaintiff was arrested and charged on the same day, July 9, 2006. (Tompkins Aff., Ex. A.)  Plaintiff has not alleged that any exculpatory evidence came to light between being arrested and charged.  On these facts, therefore, the probable cause analysis for Plaintiff's arrest and her prosecution is the same.  *See Kinzer v. Jackson*, 316 F.3d 139, 144 (2d Cir. 2003) (noting that if probable cause existed at the time of arrest, it continues to exist at the time of prosecution unless undermined "by the discovery of some intervening fact").

Based on the undisputed evidence in the record, Defendants have demonstrated probable cause, both for Plaintiff's arrest and the subsequent initiation of criminal process against her.  At the time of arrest, Tompkins, the arresting officer, used "reasonably trustworthy information of

---

[12]  If Plaintiff, as a pro se litigant, requires copies of any of the cases reported only in Westlaw, Plaintiff should request copies from opposing counsel.  *See Lebron v. Sanders*, 557 F.3d 76, 79 (2d Cir. 2009); S.D.N.Y. & E.D.N.Y. Local Rule 7.2 (noting that opposing counsel, upon request, shall provide a pro se litigant with copies of authorities cited in this opinion which are unpublished or reported only on computerized databases).

facts and circumstances" that would be "sufficient to warrant a person of reasonable caution in

the belief that" Plaintiff was driving while intoxicated.  *Jocks*, 316 F.3d at 135 (internal

quotation marks omitted).  Specifically, Tompkins determined that Plaintiff was intoxicated after

he observed "a strong odor of alcoholic beverage on her breath [and], bloodshot watery eyes,"

and Plaintiff had "admitted to consuming liquor and beer," and after Plaintiff failed multiple

tests for intoxication.[13]  (Tompkins Aff., Ex. A (felony complaint); Tr. 25:9-18.)  Tompkins

likewise had sufficient basis to believe that Plaintiff, not Dahowski, had been driving the Dodge

Dart.  The universe of possible drivers was limited to Dahowski and Plaintiff, as the only two

occupants in the car at the time of accident, and Dahowski claimed that Plaintiff had been

driving.  (Tr. 23:4-6.)  Tompkins further relied on the fact that the damage to the vehicle had

occurred almost exclusively on the passenger side of the car and that Dahowski had visible

injuries that would have been consistent with the likely injuries that an occupant of the

passenger's seat would have sustained in the accident.[14]  In contrast, Tompkins observed that

Plaintiff had not been visibly injured, suggesting that she had not been in the passenger seat of

the car.  Finally, Tompkins relied on Littell's information, as relayed to him by Loucks, that

Littell had observed Plaintiff in the driver's seat of the car following the accident.[15]  The

accuracy of Littell's statement was at least partially corroborated by other emergency personnel

---

[13]  As noted, Plaintiff does not presently contest the fact of her intoxication.

[14]  Emergency medical personnel advised Tompkins of the consistency between Dawhoski's injuries and the passenger seat damage when he first arrived at the accident scene. (Tr. 12:21-25; 13:2-10.)

[15]  Although not specifically contested, Tompkins was able to properly rely upon Loucks's account of Littell's observations.  *United States v. Colon*, 250 F.3d 130, 135 (2d Cir. 2001) ("[W]here law enforcement authorities are cooperating in an investigation . . . the knowledge of one is presumed shared by all." (citations and internal quotation marks omitted)).

who told Tompkins that when they arrived on the scene, "they believe[d] [Dahowski] came out of the passenger side of the car."  (Tr. 13:6-10.)

In short, Tompkins based his decision to arrest Plaintiff primarily on his direct observations of the accident scene and witness statements from Dahowski, Littell, and emergency personnel on the scene.  The witness statements alone provided Tompkins with probable cause to arrest Plaintiff.  *See Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) ("'[I]t is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness.'" (alteration in original) (quoting *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000))); *Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) ("When information is received from a putative victim or an eyewitness, probable cause exists, unless the circumstances raise doubt as to the person's veracity." (citation omitted)).[16]  Taken together with his corroborating personal observations and statements by other emergency personnel, Tompkins clearly had probable cause to arrest Plaintiff on the night of the accident.  *See Pomento v. City of Rome*, 647 N.Y.S.2d 604, 606 (App. Div. 1996) ("The statement of [a witness] to Officer Simons that she had seen plaintiff seated on the driver's side of the truck, which was resting against a stop sign, coupled with the officers' own observations of plaintiff's intoxication and the damage to the truck and

---

[16]  Plaintiff's assertion that Defendants should have investigated further her claim that she was not the driver does not diminish the strength of the information relied upon by Tompkins in arresting Plaintiff.  *See Curley*, 268 F.3d at 70 ("[W]e have found probable cause where a police officer was presented with different stories from an alleged victim and the arrestee . . . . Nor does it matter that an investigation might have cast doubt upon the basis for the arrest.").

the stop sign were sufficient to provide the officers with reasonable cause to believe that plaintiff

had driven the vehicle in an intoxicated condition.").[17]

Plaintiff raises multiple objections to Defendants' claims.  First, and most notably, she

argues that she was not driving the car and seems to rely upon the fact of her acquittal as proof

that probable cause did not exist to arrest or charge her.  (Pl.'s Counter-Statement 2 (arguing that

Littell's deposition was "not substanieiated (sic) in any form through the trial therefore probable

cause was not established"); Pl.'s Aff. 2.)  Even assuming *arguendo* that Plaintiff was not

driving the car, neither this fact nor her acquittal alone undermines the probable cause to arrest

her.  "[P]robable cause does not require an officer to be certain that subsequent prosecution of

the arrestee will be successful.  It is therefore of no consequence that a more thorough or more

probing investigation might have cast doubt upon the situation."  *Rodriguez v. City of N.Y.*, No.

08-CV-4173, 2012 WL 1059415, at *7 (E.D.N.Y. Mar. 28, 2012) (quoting *Krause v. Bennett*,

887 F.2d 362, 371 (2d Cir. 1989)); *cf. Bernard v. United States*, 25 F.3d 98, 103 (2d Cir. 1994)

(noting that probable cause exists even where it is based upon mistaken information, so long as

the arresting officer was reasonable in relying on that information).  With respect to Plaintiff's

acquittal, there is no suggestion in the record that the jury found, or relied upon, a lack of

probable cause in order to acquit her.  *Cf. Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997)

("The jury was instructed that it could not return a verdict in favor of [defendant] unless it found,

*inter alia,* 'the absence of probable cause' for the criminal proceeding against him.").  Indeed,

---

[17]  To the extent that Plaintiff argues that statements from other emergency personnel
cannot be considered because they have not personally "come forward to swear to fact" (Pl.'s
Aff. 3), the Court notes that such statements have only been described herein as corroboration to
Defendants' personal observations and Littell's statement which, as noted, amply establish
probable cause by themselves.

given that Littell, the main eyewitness, failed to appear at trial, the jury was not privy to a key piece of evidence upon which Tompkins relied to arrest Plaintiff.

Plaintiff's other arguments vary between the speculative and the fanciful.  For instance, Plaintiff proffers that she believes "the only reason [she] was charged and not [] Dahowski," was because Dahowski's father "who is now deceased, was a long time police officer."  (Pl.'s Aff. 2.) Even after the completion of discovery, however, Plaintiff is utterly unable to provide any support for this conjecture.  Thus, this claim is no reason to deny summary judgment. *McPherson*, 457 F.3d at 215 n.4 (noting that "speculation alone is insufficient to defeat a motion for summary judgment"); *Kulak*, 88 F.3d at 71 (noting that speculation will not defeat summary judgment).  To take another example, Plaintiff argues that Littell's statement at the accident site "says nothing about me driving."  (Pl.'s 56.1 Response ¶¶ 3-4.)  As Defendants note, however, Littell's statement was that moments after the accident occurred, Littell "saw [Plaintiff] in the driver's seat and saw [] Dahowski get out of the front passenger seat."  (Defs.' 56.1 ¶ 3.)  This inconsistency — if it can be characterized as such — does not create a dispute of a material fact as probable cause can be supported in many ways, including an eyewitness account that Plaintiff emerged from the driver's seat right after the accident.  *See, e.g.*, *Pomento*, 647 N.Y.S.2d at 606 (holding an eyewitness account to an officer that an individual had been seated on the driver's side of a vehicle after a possible collision to be supportive of probable cause for a DWI charge). Plaintiff also submits that, according to Defendants' account, Littell still could have testified later in the trial even if he missed his scheduled appearance.  (Pl.'s 56.1 Response ¶¶ 11-12.) This claim is simply immaterial: Littell's testimony at trial would not have affected whether

15

Tompkins had probable cause at the time Plaintiff was arrested and charged.  As such, this is not a material dispute of fact.[18]

Finally, Plaintiff lists a number of "inconstancies (sic) between the Officers (sic) testimonies (sic) and the alleged witness."  (Pl.'s 56.1 Counter-Statement 1.)  Many, if not all, of Plaintiff's examples are simply not "inconsistencies" on their face.[19]  "In any event, probable cause is not destroyed merely because there are some inconsistencies in the various witnesses' accounts of the facts of a crime, or by a lack of physical evidence."  *Benn v. Kissane*, No. 09-CV-4470, 2011 WL 5513153, at *4 (E.D.N.Y. Nov. 10, 2011) (citing *Curley*, 268 F.3d at 70).

In addition to being unable to refute Defendants' probable cause defense, Plaintiff is also unable to show that Defendants acted with malice.  "Showing malice under New York law . . . means that the defendant must have commenced the prior criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served."  *Rounseville v. Zahl*, 13 F.3d 625, 630 (2d Cir. 1994) (quoting *Nardelli v. Stamberg*, 377 N.E.2d 975, 976 (N.Y. 1978)).  New York courts have recognized "that actual malice can rarely be established through direct evidence and thus may be proven though circumstantial evidence."  *Id*.

Even with the benefit of a standard of proof which allows circumstantial evidence, however, Plaintiff has not demonstrated malice.  In the first place, while a "lack of probable cause generally creates an inference of malice," *Boyd*, 336 F.3d at 78, Plaintiff, for the reasons

---

[18]  Also, Littel's affidavit, which has gone unchallenged by Plaintiff, conclusively puts to rest Plaintiff's self-serving hypothesis that Defendants fabricated a witness to the accident.  (Am. Comp. ¶ 14.)

[19]  For instance, Tompkins' alleged statement that Plaintiff "had no contusions or was not bleeding or anything like that" is not inconsistent with Littell's statement that Plaintiff looked "unconscious" and "slumped over the wheel" immediately following the accident.  (Pl.'s Counter-Statement ¶ 3; Littell Dep. 16:1-5.)

already discussed in this Opinion, has not established a dispute of material fact that might indicate a lack of probable cause.  Malice may also be shown when a "prosecution complained of was undertaken . . . in reckless disregard of the rights of the plaintiff," *Pinsky v. Duncan*, 79 F.3d 306, 313 (2d Cir. 1996) (internal quotation marks omitted), or where the prosecutor had "a wrong or improper motive," *Lowth*, 82 F.3d at 573.  *See also Manganiello v. City of N.Y.*, 612 F.3d 149, 164 (2d Cir. 2010) (noting that a plausible claim of malice could arise where an officer had a "myopic focus" on one suspect, made "seemingly inexplicable false statements" about a suspect, was willing "to coerce an inculpatory statement," or to indict a suspect "on the basis of testimony of another person who was known to have lied" to the officer in the same matter). Plaintiff does not plausibly allege, much less substantiate, malice by Defendants on these grounds.  Indeed, Plaintiff's sole basis for alleging malice is her *belief* that she was arrested because Dahowski's father "who is now deceased, was a long time police officer."  (Pl.'s Aff. 2). However, there is *no* evidence in the record whatsoever about Dahowski's father – including whether he was even a police officer or is deceased – much less that Defendants improperly acted on such facts.  Therefore, Plaintiff is unable to establish that Defendants acted with malice.

## III. CONCLUSION

For the reasons stated herein, Defendants' Motion for Summary Judgment is granted.

The Clerk of Court is respectfully directed to terminate the pending motion (Dkt. No. 33), and

enter judgment for Defendants Tompkins and Loucks.

SO ORDERED.

Dated:      July **9**    , 2012
            White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

18

Service List (by mail):

Maureen Wilk
15 Bambi Lane
Catskill, NY 12414
PRO SE

David Lewis Posner, Esq.
McCabe & Mack LLP
63 Washington Street, P.O. Box 509
Poughkeepsie, NY 12602